<u>**NOT FOR PUBLICATION**</u>

**FILED**

JAMES J. WALDRON, CLERK

**APRIL 5, 2010**

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: <u>s/ Ronnie Plasner,</u> DEPUTY

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In Re:

**JANET CORONA a/k/a CORONA**
**SUAREZ CARPENTRY,**

       Debtor.

**JRC LUMBER CORP.,**

       Plaintiff,

  v.

**JANET CORONA,**

       Defendant.

Case No.: 08-15924  (DHS)

Adv. No.: 08-1712  (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

<u>**OPINION**</u>

**APPEARANCES:**

Kopelman & Kopelman L.L.C.
Michael S. Kopelman, Esq.
55 Main Street
Hackensack, New Jersey 07601
***Counsel for Defendant/Debtor, Janet Corona***

Broege, Neumann, Fischer & Shaver, L.L.C.
Peter J. Broege, Esq.
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
***Counsel for Plaintiff, JRC Lumber Corp.***

## THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE

Before the Court is a motion for partial summary judgment.  On July 3, 2008, judgment creditor JRC Lumber Corp. ("Plaintiff") filed an adversary complaint against Chapter 7 debtor, Janet Corona ("Defendant"), to object to a discharge under § 727(a) of the Bankruptcy Code and to determine the dischargeability of debts owed to the Plaintiff under § 523(a) of the Bankruptcy Code. The Plaintiff filed a motion for partial summary judgment against the Defendant, seeking a denial of discharge on grounds that the Defendant: (1) knowingly and fraudulently made "false oaths" under § 727(a)(4)(A) by omitting information concerning her assets, income, and liabilities from her petition; (2) fraudulently transferred and concealed property within one year of the filing of her petition ("petition date") under § 727(a)(2)(A); and (3) fraudulently transferred and concealed estate property after the petition date under § 727(a)(2)(B).

The Defendant filed a Memorandum of Law in Opposition to the Plaintiff's Motion for Partial Summary Judgment, a Response to Plaintiff's Statement of Material Facts Not in Dispute, and a Certification in Opposition to the Plaintiff's Motion for Partial Summary Judgment ("Certification"), in which she argued that: (1) her false statements and omissions were immaterial to the administration of her bankruptcy estate; (2) the omissions were the result of inadvertence; and (3) she lacked the intent required for her actions to warrant a denial of discharge.

For any and all reasons stated hereafter, the Plaintiff's motion for summary judgment is granted and the Defendant's discharge is denied.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984.  This is further a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The

3

following shall constitute the Court's findings of fact and conclusions of law in accordance with the Federal Rules of Bankruptcy Procedure 7052.

## <u>Statement of Facts and Procedural History</u>

The Plaintiff is a family-owned lumber molding manufacturing business incorporated in the State of New York.[1]  (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 11).  In June 2003, the Plaintiff sold assets, namely machinery, the right to serve its customers, and lumber inventory, to JRC Millworks, Incorporated ("JRC Millworks"), a company founded by the Defendant and her business partner, Julio Suarez ("Suarez").[2]  (*Id.* at ¶ 13).  Thereafter, JRC Millworks and Suarez defaulted on a promissory note given to the Plaintiff as partial payment for their purchase of machinery and the right to serve the Plaintiff's customers. (*Id.* at ¶ 14).  JRC Millworks also defaulted on payments for lumber purchased from the Plaintiff.[3]  (*Id.*).

In June 2005, JRC Millworks ceased operations at its location in Astoria, New York and two new companies, International Mill Products, Inc. and International Mill Products Incorporated (collectively, "International Mill"),[4] were formed.  (*Id.* at ¶ 15).  The materials, machines, and customer lists previously used by JRC Millworks at the Astoria location were sent to the International Mills facility in Paterson, New Jersey for use in connection with that business.  (*Id.*).

---

[1] J. Richard Cohen serves as president and sole shareholder of the company, while his son, Glenn Cohen, serves as the company's vice president.  (Aff. of Glenn S. Cohen in Supp. of Pl.'s Mot. for Partial Summ. J., ¶ 5) ("Cohen Aff.").

[2] The Defendant denies having "founded" JRC Millworks.  (Def.'s Resp. to Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 13).  Regardless, there is no dispute that the Defendant was actively involved in the company's affairs.

[3] A check intended for the Plaintiff was also improperly deposited into a JRC Millworks bank account. (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 14).  The Defendant claims, however, that the funds were later returned to the Plaintiff.  (Def.'s Resp. to Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 14).

[4] International Mill Products, Incorporated is a New Jersey corporation and International Mill Products, Inc. is a New York corporation.  The New York corporation never went into operation.  Thus, hereinafter, references to "International Mill" pertain to the New Jersey corporation unless specified otherwise.

In November 2005, International Mill ceased operations and a new and unrelated company, Erion and Farias Millworks Incorporated, began using the Paterson facility. (Cohen Aff., ¶ 9).

In January 2006, the Defendant formed a carpentry business called Corona Suarez Carpentry and General Construction, Inc. ("CS Carpentry"). (Pet., Apr. 2, 2008, at 30 (Cohen Aff., ¶ 27, Ex. C)). The Defendant served as the president and sole shareholder of the company, which ultimately ceased operations in November 2006. (*Id.* at 10, 30; Dep. of Janet Corona, 169:8-20 (Cohen Aff., ¶ 25, Ex. K)).

### A. <u>State Court Judgments Involving the Defendant and the Defendant's Associates</u>

On May 5, 2006, the Supreme Court of New York, New York County ("New York Court") entered judgment in favor of the Plaintiff and against JRC Millworks and Suarez in the amount of $151,902.74 for JRC Millworks' default on the promissory note given to the Plaintiff. (New York Ct. J., May 5, 2006 (Cohen Aff., ¶ 29, Ex. E)). Thereafter, on October 19, 2006, the same court entered another judgment against JRC Millworks in the amount of $309,790.22 for the company's failure to pay for goods and services received from the Plaintiff, and to pay an account stated. (New York Ct. J., Oct. 19, 2006 (Cohen Aff., ¶ 30, Ex. F)).[5]

On July 26, 2006, in a separate action between the Plaintiff and JRC Millworks, International Mill,[6] and Erion and Farias Millworks, Inc., the New York Court granted the Plaintiff's petition to set aside a transfer of assets from JRC Millworks to International Mill. (New York Ct. J., Oct. 25,

---

[5]Suarez was held personally liable for the amount of this judgment, as the court later pierced the corporate veil of JRC Millworks to reach his assets. (New York Ct. J., Aug. 2, 2007 (Cohen Aff., ¶ 30, Ex. F)).

[6]The action was instituted against both International Mill Products, Inc. and International Mill Products, Incorporated.

2006 (Cohen Aff., ¶ 31, Ex. G)).[7]  The court found that the transfer of *any* assets between the two companies was null and void as a fraudulent conveyance under New York Debtor and Creditor Law § 276.[8]  (*Id.*).

Furthermore, in August 2007, the New York Court entered a default judgment in favor of the Plaintiff in which the court pierced the corporate veils of JRC Millworks and International Mill[9] and held that the Defendant, Mitchell Suarez, and Conchita Suarez[10] were each personally liable for the debts, acts, and omissions of both corporations.  (New York Ct. J., Aug. 8, 2007 (Cohen Aff., ¶ 32, Ex. H)).  More specifically, the court determined that the three individuals were liable for: (1) the amounts of the October 19, 2006 judgment entered against JRC Millworks and Suarez; (2) JRC Millworks' fraudulent transfer of assets to International Mill; and (3) each having received fraudulent conveyances of assets from JRC Millworks and International Mill in violation of New York's Debtor and Creditor Law.[11]  (*Id.*).

## B.  The Defendant's Bankruptcy Petition

On April 2, 2008, the Defendant filed a petition for relief under chapter 7 of the Bankruptcy Code.  A § 341 meeting of creditors ("341 meeting") was held thereafter on May 8, 2008.  At this

---

[7]This decision was memorialized in an order dated October 25, 2006.

[8]Section 276 of the New York Debtor and Creditor Law states: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debtor and Creditor Law § 276 (2001).

[9]This action involved both International Mill Products, Inc. and International Mill Products, Incorporated.

[10]Conchita Suarez is the wife of Suarez and mother of Mitchell Suarez.

[11]Although the Defendant and Mitchell Suarez moved to vacate the August 2007 judgment, the appellate judge denied their motions in light of the "extensive prior record" proving that the fraudulent transfers at issue had occurred.  (New York Ct. J., Feb. 15, 2008 (Cohen Aff., ¶ 33, Ex. I)).

meeting, the Defendant revealed the existence of additional assets and liabilities not set forth in her bankruptcy petition, schedules, or Statement of Financial Affairs (collectively, "Petition").

### (1) The Dominican Republic Property

According to the Plaintiff, the Defendant and Suarez purchased property in the Dominican Republic ("DR Property") for the Defendant's parents in May or June of 2005 in the amount of approximately $450,000. (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 26). The Plaintiff also claims that Suarez and the Defendant co-signed a mortgage on the DR Property in the amount of $350,000 and that the Defendant and Suarez have made monthly payments on this mortgage. (*Id.* at ¶¶ 34-35). Neither the mortgage nor the property was listed on the Defendant's Petition.

At the 341 meeting, the Defendant acknowledged that she was both obligated with Suarez under a mortgage on the DR Property and named on the deed. (Tr. of § 341 Mtng., at 13:8-22, 15:23-25-16:1-4 (Cohen Aff., ¶ 28, Ex. D)). The Defendant also stated that she paid $10,000 for the property. (*Id*. at 15:1-8). Later in her certification, however, the Defendant claimed that she had no interest in the DR Property, asserting instead that it was her father who had purchased the property. (Def.'s Certif. in Opp'n to Pl.'s Mot. for Partial Summ. J., ¶ 6). Also, the $10,000 payment mentioned at the 341 meeting referred only to an amount that she had contributed towards the purchase price, and not the total price paid for the property. (Def.'s Resp. to Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 31). Lastly, the Defendant denied having any obligations under a mortgage on the DR Property, explaining that while she and Suarez had applied for a $350,000 mortgage, their application was never processed. (*Id.* at ¶¶ 31-35).

7

### (2) The "Suarez Receivable"

While not disclosed on her Petition, the Defendant revealed at the 341 meeting that Suarez owes her between $60,000 to $70,000 ( "Suarez receivable") as a result of a loan she gave to him years earlier.  (Tr. of § 341 Mtng., at 9:25-10:1-11, 20:3-6 (Cohen Aff., ¶ 28, Ex. D)).  The Defendant amended her Petition to reflect this receivable on July 31, 2009.  (Am. Pet., July 31, 2009, at 2).

### (3) The Blue GMC Cargo Van

The Defendant acknowledged during the 341 meeting that she owned and recently sold a blue cargo van that was not listed on her Petition.  (Tr. of § 341 Mtng., at 23:8-24 (Cohen Aff., ¶ 28, Ex. D)).

### (4) The Defendant's Stock Ownership

On her Petition, the Defendant stated that her stock ownership was limited to a 100% ownership interest in CS Carpentry.  (Pet., at 10 (Cohen Aff., ¶ 27, Ex. C)).  The Defendant revealed during the 341 meeting, however, that she is the sole owner of a limited liability company called 47 East 33rd Street, LLC, and a shareholder of a company called JMJ Foreclosure Associates.  (Tr. of § 341 Mtng., at 20:17-26-21:1, 26:3-6).  The Defendant amended her Petition to reflect her interests in these two companies.[12]  (Am. Pet., July 31, 2009, at 2).

---

[12]There is also a dispute as to whether the Defendant is a shareholder of JRC Millworks.  In an affidavit submitted by Thomas Zawalich, a shareholder of JRC Millworks, Zawalich stated that the Defendant owned 5% of JRC Millworks' stock in the years 2004 and 2005, though he was unsure of the company's stock ownership thereafter.  (Aff. of Thomas Zawalich, at 3 (Cohen Aff., ¶ 43, Ex. S)).  The Defendant, on the other hand, denies that she is a shareholder of JRC Millworks, but did acknowledge at the 341 meeting that she was named in the Plaintiff's lawsuit against JRC Millworks due to the Plaintiff's belief that she was a 5% shareholder of the company.  (Tr. of § 341 Mtng., at 5:10-26-6:1-5 (*Cohen Aff.*, ¶ 28, Ex. D)).

### (5) <u>The Defendant's Transfer of 47 East 33rd Street to 47 East 33rd Street, LLC</u>

On February 7, 2007, approximately two months prior to the petition date, the Defendant transferred her home, located at 47 East 33rd Street in Paterson, New Jersey, to a limited liability company called 47 East 33rd Street, LLC in exchange for $1. (Tr. of § 341 Mtng., at 21:2-17 (Cohen Aff., ¶ 28, Ex. D)). The Defendant, who is the sole owner of the purchasing limited liability company ("LLC"), disclosed the transfer at the 341 meeting, where she explained that its purpose was to protect her property from potential lawsuits. (*Id.* at 20:23-26-21:1-26). The Defendant also denied that the transfer was meant to keep the property out of the reach of creditors, and claimed that she was not being sued by the Plaintiff at the time of the transfer. (*Id.* at 22:13-26). Despite these contentions, affidavits submitted by process servers Alice and Henry Dobson state that the Defendant was served with a summons and complaint for the Plaintiff's action to pierce the corporate veils of JRC Millworks and International Mill nearly three months before the transfer of her home to the LLC. (Affs. of Alice and Henry Dobson (Cohen Aff., ¶ 50, Ex. Q)).

The Defendant testified at the 341 meeting that her home had most recently been appraised for $340,000. (Tr. of § 341 Mtng., at 8:2-6). Moreover, at present, the Defendant has no equity in her home, which is being foreclosed upon. (Def.'s Certif. in Opp'n to Pl.'s Mot. for Partial Summ. J., ¶ 10). The Defendant does in fact list her home on her Petition; however, there is no mention of the *transfer* of the property to the LLC. (Pet., at 8, 28). The Defendant has since amended her Petition to reflect this transfer. (Am. Pet., at 17).

### (6) <u>Unemployment Insurance Liability</u>

On January 8, 2008, an administrative law judge for the State of New York Unemployment Insurance Appeal Board upheld a determination by the state's Department of Labor that: (1) the

Defendant had willfully misrepresented her employment status to obtain benefits; and (2) the

Defendant had accordingly received an overpayment of benefits in the amount of $5,472 that the

state was entitled to recover.  (Decision of Unemployment Ins. Appeal Bd. (Cohen Aff., ¶ 46, Ex.

V)).  The Defendant amended her Petition to reflect this liability on July 31, 2009.  (Am. Schedule

E, at 2).

### (7) <u>Sheriff's Levy and Seized Bank Accounts</u>

As a result of the August 2007 state court judgment piercing the corporate veils of JRC

Millworks and International Mill, the Office of the Sheriff of New York County, New York issued

a sheriff's levy on the Defendant's JP Morgan Chase bank accounts.  (Cohen Aff., ¶ 47, Ex. W).

The bank accordingly froze the Defendant's accounts and remitted the funds to the sheriff.  (*Id.*).

Both the sheriff's levy and the seizure of the Defendant's bank accounts were not disclosed on the

Defendant's Petition as part of her Statement of Financial Affairs.  However, the Defendant has

since amended her Petition to reflect the seized accounts.  (Pet., at 27; Am. Pet., at 15).

### (8) <u>The Defendant's Check to Edwardo Taveras</u>

On November 19, 2006, the Defendant issued a check from her personal checking account

in the amount of $20,000 made payable to Edwardo Jose Taveras, the builder of the DR Property.

(Cohen Aff., ¶ 40, Ex. P).  At the 341 meeting, the Defendant could not recall the purpose of the

check and claimed that she was not familiar with the name, Edwardo Taveras.  (Tr. of § 341 Mtng.,

at 16:22-26, 17:10-26, 18:1-6 (Cohen Aff., ¶ 28, Ex. D)).  Thereafter, in the Defendant's

Certification, the Defendant explained that the check reflected a payment made on her father's

behalf towards the purchase price of the DR Property, and her father has since repaid her the money.

(Def.'s Certif. in Opp'n to Pl.'s Mot. for Partial Summ. J., ¶ 9).

### (9) **The Defendant's Corporate Management Positions**

In the Defendant's Petition, she lists CS Carpentry as the only company in which she has an ownership interest.  However, the Defendant revealed at the 341 meeting that she is the sole owner of 47 East 33rd Street, LLC, and a shareholder and officer of JMJ Foreclosure Associates.[13]  (Tr. of § 341 Mtng., at 20:17-26-21:1, 26:3-6).  Moreover, while the Defendant denied being a shareholder or officer of International Mill at the 341 meeting, a New Jersey certificate of incorporation filed on June 27, 2005 lists the Defendant as a director of that company.  (*Id.* at 25:15-20; Cert. of Inc. for Int'l Mill (Cohen Aff., ¶ 44, Ex. T)).

### (10) **The Defendant's Real Estate Commissions**

According to the Plaintiff, the Defendant received more than $50,000 in commissions from real estate transactions in 2006, as evidenced by copies of checks made payable to the Defendant from various real estate brokerage companies.  (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 54-56;(Cohen Aff., ¶ 45, Ex. U)).  Such commissions were not disclosed on the Defendant's Petition, as the Defendant listed her 2006 business income as $6,578.  (Pet., at 25).  The Defendant asserts that the income was the result of a refinance, that such commissions were reported on her tax returns, and that in any event, such commissions have no material affect on the administration of her bankruptcy estate.  (Def.'s Certif. in Opp'n to Pl.'s Mot., ¶ 16).

### (11) **Transfers between CS Carpentry and the Defendant**

The Plaintiff contends that the Defendant withdrew money from the CS Carpentry bank account on several occasions between November 2006 and November 2007 to pay for personal expenses, such as Karate lessons, cable television, and mortgage payments on her personal

---

[13]According to the Defendant, JMJ Foreclosure Associates never went into operation.  (Dep. of Janet Corona, 164:21-25, 165:1-25; 166:1-4 (Cohen Aff., ¶ 25, Ex. K)).

residence. (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 54-56). The blue cargo van sold by the Defendant was also previously titled to CS Carpentry. (*Id.* at ¶ 57).

At the 341 meeting, the Defendant denied making any transfers to herself from CS Carpentry within three years of the meeting date. (Tr. of § 341 Mtng., at 24:2-15). The Defendant later acknowledged in her Certification, however, that she *had* used CS Carpentry funds for personal expenses, though she "contributed money into the account in excess of those transactions." (Def.'s Certif. in Opp'n to Pl.'s Mot., ¶ 11).

<u>Discussion</u>

**I.    Summary Judgment Standard**

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In doing so, the court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Accordingly, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party bears the initial burden in showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "'establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).

An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. The materiality of a fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

Even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she bears the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party motions the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-

movant has not filed a cross-motion for summary judgment.  *See Peiffer v. Lebanon School Dist.*,

673 F. Supp. 147, 151-*52 (M.D. Pa. 1987) (citation omitted).  On the other hand, a court must deny

a motion for summary judgment when a genuine issue of material fact remains to be tried, or where

the moving party is not entitled to a judgment as a matter of law.

## II.    Dischargeability of Debts under Section 727(a)(4)(A) of the Bankruptcy Code

A discharge under § 727 of the Bankruptcy Code is the primary tool used to afford debtors

a fresh start.  Indeed, Congress has described the statute as the "heart" of bankruptcy law's fresh

start provisions.  *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993); *see also* H.R. Rep. No. 595,

95th Cong. 1st Sess. 384 (1977).  As a result, courts will deny a discharge only in extreme

circumstances, and will construe the exceptions to discharge strictly against the creditor and liberally

in favor of the debtor.  *E.g. Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113 (3d Cir.

1995); *Stapleton v. Yanni (In re Yanni)*, 354 B.R. 708, 711 (Bankr. E.D. Pa. 2006) (stating that a

denial of discharge is "by far the most severe penalty a Chapter 7 debtor can receive in the life of

a bankruptcy case").

Still, the Bankruptcy Code is meant to discharge only the honest but unfortunate debtor.

*Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *see also Wachovia Bank, N.A. v. Spitko (In re

Spitko)*, 357 B.R. 272, 298 (Bankr. E.D. Pa. 2006) (explaining that a discharge is "a privilege, not

a right, and should only inure to the benefit of the honest debtor").  Under § 727(a)(4)(A), a debtor

will not receive his bankruptcy discharge if he knowingly and fraudulently made a false oath or

account in or in connection with the case.  11 U.S.C. § 727(a)(4)(A).  This section encourages

debtors to completely and candidly disclose their assets, income, expenses, and liabilities so that

14

creditors have adequate information about the debtor's estate. *Spitko*, 357 B.R. at 312 (citing *In re Kearns*, 149 B.R. 189, 190 (Bankr. D. Kan. 1992)).

To deny a discharge under § 727(a)(4)(A), a party must prove by a preponderance of the evidence that: (1) the defendant made a statement under oath; (2) the statement was false; (3) the defendant knew the statement was false; (4) the defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *E.g.*, *Spitko*, 357 B.R. at 312; *Scimeca v. Umanoff*, 169 B.R. 536, 541 (D.N.J. 1993).

**(1) The Defendant's Statements were under Oath**

Federal Rule of Bankruptcy Procedure 1008 provides that "[a]ll petitions, lists, schedules, statements, and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746."[14] Fed. R. Bankr. P. 1008.  An "oath" under § 727(a)(4)(A) of the Bankruptcy Code therefore includes the unsworn declarations contained in the petition. *See Scimeca*, 169 B.R. at 542; *Moore v. Strickland (In re Strickland)*, 350 B.R. 158, 163 (Bankr. D. Del. 2006); *Spyra v. Finney (In re Finney)*, 333 B.R. 242, 250 (Bankr. W.D. Pa. 2005).  Statements made when one is testifying at a proceeding such as a 341 meeting or when being deposed are also under oath, as are the assertions contained in certain court filings, such as the Defendant's Certification. *See* Fed. R Civ. P. 30(b)(5)(A) (requiring that depositions begin with an on-the-record statement that includes the administration of an oath or affirmation to a deponent); *Office of the U.S. Tr. v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 807 (Bankr. M.D. Pa. 2005) (stating that debtor was under oath when he testified at the 341 meeting); (*see also* Def.'s Certif. in Opp'n to Pl.'s Mot. for Partial Summ. J.,

---

[14] Section 1746 of the United States Code states that "unsworn declarations are equivalent to a verification under oath if the declarant states in writing that the information is true under penalty of perjury." 28 U.S.C. § 1746 (2006).

¶ 6 (setting forth the Defendant's certification that "the foregoing statements made by [her] are true under penalty of perjury")).

Here, there is no dispute that the statements made by the Defendant at the 341 meeting and in her Petition and Certification were all under oath. Thus, the first element required to deny a discharge under § 727(a)(4)(A) is met.

### (2) The Defendant's Statements were False

To deny a discharge under § 727(a)(4)(A), a plaintiff must establish that statements made by the Defendant under oath were false. A "false oath" includes: (1) false statements or omissions in a debtor's petition and (2) false statements by a debtor at examinations held during the course of the bankruptcy proceedings. *E.g.*, *Scimeca*, 169 B.R. at 542-43 (holding that a debtor's failure to list his interest in a business on his petition when in fact he was the company's sole stockholder and chief executive constituted a false oath); *Strickland*, 350 B.R. at 163 (explaining that a debtor's failure to list all assets owned can constitute a false oath or account); *Continental Bank v. Bobroff (Matter of Bobroff)*, 69 B.R. 295, 298 (E.D. Pa. 1987) (stating that § 727(a)(4)(A) has been applied to verbal false oaths). Both types of "false oaths" are present in this case.

First, the Defendant failed to disclose several assets and liabilities on her petition, such as: (1) the Suarez receivable; (2) the corporate management positions she holds in International Mill, JMJ Foreclosure Associates, and 47 East 33rd Street, LLC; (3) her unemployment insurance liability to the State of New York; (4) her real estate commissions; (5) the sheriff's levy and seizure of her bank accounts; and (6) the assets she received from CS Carpentry.[15] These omissions equate to

---

[15]A dispute exists between the parties as to whether the Defendant owns the DR Property and whether the Defendant is obligated under a mortgage on that property. The Plaintiff argues that the Defendant owns and is bound by a mortgage on the property, and thus her omission of this asset and liability from the Petition is another example of a "false oath" under §727(a)(4)(A). (Pl.'s Stmt. of Mat. Facts Not in Disp., ¶ 26, 34-35). The Defendant,

"false oaths" since, in failing to disclose them, the Defendant is misrepresenting the nature of her

estate to creditors.

Second, the Defendant made several false statements during the course of this bankruptcy

case, as evidenced by the contradictions between her 341 meeting testimony and her subsequently

filed Certification. At the 341 meeting, for example, the Defendant denied having made or received

any transfers from CS Carpentry within three years of the meeting date. In her Certification,

however, the Defendant admitted to having paid for personal expenses using funds from the CS

Carpentry bank account on several occasions. In addition, the Defendant denied having any

familiarity with Edwardo Taveras at the 341 meeting, yet she acknowledged in her Certification that

she had sent him a down payment on the DR Property on behalf of her father. The Defendant further

stated at the 341 meeting that she both purchased and was obligated under a mortgage on the DR

Property, yet later denied having any interests or obligations with respect to the property. Finally,

at the 341 meeting, the Defendant stated that she had reviewed her Petition with her attorney and

was certain that its contents were accurate. (Tr. of § 341 Mtng., at 12 (Cohen Aff., ¶ 28, Exhibit D)).

Later on in that same meeting, however, the Defendant disclosed the existence of several additional

assets not set forth in the Petition.

In light of these contradictions, as well as the Defendant's omission of several assets and

liabilities from her petition, this Court finds that the Defendant made several "false" oaths for

---

on the other hand, denies having had any interest in the DR Property, nor any obligations under a mortgage on that
property. (Def.'s Resp. to Pl.'s Stmt. of Mat. Facts Not in Disp., ¶¶ 31-35). This Court finds that, because there are
several other omissions from the Defendant's Petition, aside from the DR Property and mortgage obligation, that
may serve as a basis for a denial of discharge under § 727(a)(4)(A), it is not necessary for this Court to resolve the
issue of whether the Defendant actually has an interest in the DR property. More significant to this Court is the
Defendant's contradictory statements concerning the property, as described above.

purposes of § 727(a)(4)(A).    Thus, the second element required to deny a discharge

under§ 727(a)(4)(A) is met.

### (3) The Defendant's False Oaths were Made Knowingly and with Fraudulent Intent[16]

Omissions or false statements caused by an honest mistake or inadvertence are not sufficient

to deny a discharge.  *Spitko*, 357 B.R. at 312 (citing *Georges v. Solodky (In re Georges)*, 138 Fed.

Appx. 471, 471 (3d Cir. 2005)).    Rather, a debtor will be denied a discharge under § 727(a)(4)(A)

only when his or her false oath was made knowingly and with fraudulent intent.    A false oath is

made "knowingly" where the statement is: (1) known by the debtor to be false; (2) made without

belief in its truth; or (3) made with reckless disregard for the truth.    *Id.* at 313.    Courts have

identified several factors as significant in finding that a debtor acted with reckless disregard for the

truth and thus "knowingly" for purposes of § 727(a)(4)(A): (1) the fact that the events for which the

Petition questions elicited information took place prior to the petition date; (2) the omission of

numerous assets from a debtor's Petition; (3) the existence of "wild disparities" between the Petition

and the debtor's testimony at the 341 meeting or other examination; and (4) the debtor's failure to

offer an explanation for his or her omissions.  *See, e.g.*, *Office of the U.S. Tr. v. Zimmerman (In re*

*Zimmerman)*, 320 B.R. 800, 810 (Bankr. M.D. Pa. 2005) (finding recklessness where there were

disparities between the debtor's schedules and 341 meeting testimony, several assets were omitted

from the debtor's petition, and the debtor failed to explain why the omitted assets were not included

in his amended petition); *Dolata v. Dolata (In re Dolata)*, 306 B.R. 97, 152-53 (Bankr. W.D. Pa.

2004) (finding that the debtor acted knowingly where the events in question occurred recently before

---

[16] While the issues of whether a debtor's false oaths were made knowingly and with fraudulent intent are two separate considerations under §727(a)(4)(A), much of the analysis regarding a debtor's knowing false oath applies "with equal validity" to the issue of fraudulent intent.  *See Dolata v. Dolata (In re Dolata)*, 306 B.R. 97, 155 (Bankr. W.D. Pa. 2004). Thus, the factors are combined for purposes of this analysis.

he filed his petition and thus he could not have forgotten to include them); *Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 832, 836 (Bankr. E.D. Pa. 1987) (noting the debtor's failure to provide an explanation for his omissions in denying a discharge under§ 727(a)(4)(A)).

In establishing that a debtor acted with fraudulent intent, courts may look to circumstantial evidence and draw inferences from a course of conduct. *Scimeca v. Umanoff*, 169 B.R. 536, 542-43 (D.N.J. 1993). This is because a debtor is unlikely to admit directly that his or her intent was improper. *Id.* Moreover, as is the case in showing that a debtor acted "knowingly," "[t]he requisite degree of fraudulent intent is shown if the debtor engaged in behavior which displayed a reckless and cavalier disregard for the truth." *Zimmerman*, 320 B.R. at 810-11 (citing *In re Dolata*, 306 B.R. at 149); *see also Continental Bank v. Bobroff (Matter of Bobroff)*, 69 B.R. 295, 298 (E.D. Pa. 1987) (finding recklessness where debtor failed to disclose his interest in certain assets and made contradicting statements concerning his ownership of an asset at a Rule 205(a) hearing and at trial). Recklessness can in turn be inferred where there is a "series or pattern of errors or omissions" on a debtor's Petition. *Spitko*, 357 B.R. at 318; *see also The Cadle Co. v. Zofko (In re Zofko)*, 382 B.R. 45, 48 (Bankr. W.D. Pa. 2008) ("Multiple inaccuracies or falsehoods may rise to the level of reckless indifference to the truth, which is the functional equivalent of intent to deceive.").

While subsequent amendments to one's petition may rectify an honest mistake, such amendments will not expunge any fraud in the falsity of a statement set forth in the original petition. *Spitko*, 357 B.R. at 313; *Moore v. Strickland (In re Strickland)*, 350 B.R. 158, 164 (Bankr. D. Del. 2006) (finding that the amendment of the debtor's schedules to reflect her interest in a business did not negate the conclusion that the omission was intended to mislead or defraud her creditors). Indeed, fraudulent intent has been inferred despite a debtor's subsequent disclosure of omitted assets

where such disclosure was "compelled" by the court or by fears that the omitted assets would soon

be discovered.  *See Strominger v. Giquinto (In re Giquinto)*, 388 B.R. 152, 181 (Bankr. E.D. Pa.

2008) (finding an absence of  fraudulent intent where the debtor's submission of an amended

petition was voluntary and not the result of fears that the omitted assets would be discovered);

*Spitko*, 357 B.R. at 313 (explaining that a debtor's omission of an asset that is already known to the

trustee or a creditor will not be excused even when the debtor belatedly discloses that asset); *Dolata*,

306 B.R. at 153-54 (finding fraudulent intent and denying discharge despite amendment because the

subsequent disclosure was compelled by the court).  In addition, where a debtor's underreporting

or omission of assets is at issue, "no carelessness [can] excuse the Debtor's failure to amend his

schedules promptly when he had the leisure to do so."  *Zimmerman*, 320 B.R. at 810. .

In the present case, it is clear that the Defendant was at least reckless when she made false

oaths in her Petition and at the 341 meeting.  First, the assets and liabilities omitted from the Petition

were acquired by the Defendant prior to the petition date.[17]  Therefore, the Defendant had knowledge

of these assets and liabilities at the time of her filing.[18]  Second, numerous assets and liabilities were

omitted from the Defendant's Petition.  The Defendant argues that these omissions were inadvertent

and not made with the intent to deceive.  The fact that there was a "series or pattern" of omissions

[17] For example, the transfers between the Defendant and CS Carpentry took place between November 2006 and November 2007, the Suarez receivable arose approximately two years prior to the petition date, the unemployment insurance liability to the State of New York was incurred in January 2008, and the Defendant formed 47 East 33rd Street, LLC in February 2007, two months prior to the petition date of April 2, 2008.

[18]It is worth noting that because the Defendant was aware of these assets at the time of filing, her declaration that her Petition was accurate can also be considered a knowing false oath under § 727(a)(4)(A).  *See Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 835 (Bankr. E.D. Pa. 1987) (stating that a debtor's sworn affirmation of the truthfulness and accuracy of his Petition "could form the basis of false statements upon which discharge could be denied"); *Dolata*, 306 B.R. at 155 (noting that because debtor failed to include omitted assets in her amended petition when she had knowledge of the assets, the declaration on her petition constituted a knowing false oath).

on the original Petition, however, suggests to this Court that the Defendant's actions were not the result of inadvertence, but rather the type of extreme carelessness or reckless indifference that equates to fraud and a bar to discharge.

This conclusion is further strengthened by the "disparities" between the Defendant's Petition, Certification, and 341 meeting testimony.  For instance, on her Petition, the Defendant listed CS Carpentry as the only corporation in which she held an ownership interest, yet she revealed at the 341 meeting that she is an officer and shareholder of JMJ Foreclosure Associates and the sole owner of 47 East 33rd Street, LLC.  The Defendant also denied having received any transfers from CS Carpentry at the 341 meeting, yet, in her Certification, she admitted to having previously used CS Carpentry funds to pay for personal expenses.  Disparities such as these demonstrate that the Defendant was reluctant to be forthcoming about her assets and thus was reckless in ensuring that she had fully disclosed her assets and liabilities to creditors.

Next, the Defendant emphasizes that she not only disclosed several of her previously omitted assets and liabilities at the 341 meeting, but also filed an amended petition.  The fact that the Defendant submitted an amended petition, however, does not excuse her previous omissions under these circumstances.  The Defendant submitted an amended petition on July 31, 2009, more than one year after the petition date *and* the 341 meeting in which the additional assets were disclosed. Certainly, such a delay nullifies the impact of an amended Petition, as there was plenty of time in which Defendant could have updated the Petition to accurately reflect her interests and liabilities and yet she failed to do so.  Moreover, the Defendant's disclosure of her assets at the 341 meeting does not remove the taint from her original filing, particularly since the assets were already known by creditors.  The omitted assets and liabilities were revealed only in response to questions posed

21

by the Plaintiff's counsel at the 341 meeting, suggesting that the Defendant had no intent to disclose the assets and liabilities at all until she was compelled to do so at the meeting.

Lastly, as noted in *Zimmerman*, the Defendant has not offered a sufficient explanation for her omissions and false statements. The Defendant points only to inadvertence and the immateriality of the omitted assets to the instant bankruptcy case, neither of which adequately explain why the Defendant could have forgotten to include so many assets in her Petition. Accordingly, this Court finds that the Defendant acted with a reckless indifference to the truth when she failed to disclose assets and liabilities on her Petition and made contradictory statements concerning those assets at the 341 meeting and in her Certification. Because reckless indifference is sufficient to establish that the Defendant acted knowingly and with fraudulent intent, the third and fourth elements required for a denial of discharge under § 727(a)(4)(A) are met.

### (4) The Defendant's Statements and Omissions are Material to this Bankruptcy Case

A denial of discharge under § 727(a)(4)(A) requires that a false oath be material to the administration of the bankruptcy case. That creditors are harmed by an omission or false statement is not critical in determining whether a false oath is material. *E.g. Scimeca v. Umanoff*, 169 B.R. 536, 543 (D.N.J. 1993). Rather, "the subject matter of a false oath is 'material' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of [the bankrupt's] property." *E.g.*, *Spitko*, 357 B.R. at 312 (citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984)); *see also Scimeca*, 169 B.R. at 543 (D.N.J. 1993) (finding that debtor's failure to disclose his ownership interests in two businesses was material because the omission "prevent[ed] creditors from having an opportunity to investigate the debtor's financial condition and prevent[ed] the trustee

22

from evaluating avoidable transfers"); *Zimmerman*, 320 B.R. at 808 ("[T]here is little that will prove to be immaterial for purposes of required disclosure if it aids in understanding the debtor's financial affairs and transactions." (citing *In re Coombs*, 193 B.R. 557, 567 (Bankr. S.D. Cal. 1996))).

"Matters so trivial in nature as to have but little effect upon the estate and upon creditors have been treated as immaterial." *Randolph v. Somerville (In re Somerville)*, 73 B.R. 826, 835 (Bankr. E.D. Pa. 1987) (citing *In re Woerner*, 66 B.R. 964, 972 (Bankr. E.D. Pa. 1986)); *see also The Cadle Co. v. Zofko (In re Zofko)*, 382 B.R. 45, 49 (Bankr. W.D. Pa. 2008) (finding omissions immaterial where they related to items of trivial value and accurate answers were located elsewhere on petition).  However, claims that undisclosed assets are of little or no value, or that one has no equity in undisclosed assets, will *not* excuse a debtor's omissions as immaterial.  *See Spitko*, 357 B.R. at 312-13; *Zimmerman*, 320 B.R. at 808; *Moore v. Strickland (In re Strickland)*, 350 B.R. 158, 164 (Bankr. D. Del. 2006) (noting value of debtor's undisclosed business but finding that "even if the [b]usiness had nominal value," it was material because it related to the debtor's business dealings).  Indeed, even assets of "seemingly worthless value" may be material to a bankruptcy case. *E.g. Scimeca*, 169 B.R. at 545 (citing *In re Acuri*, 116 B.R. 873, 881 (Bankr. S.D.N.Y. 1990)).

It is further not for a debtor to determine what is worth being disclosed and what is not. Creditors "are entitled to judge for themselves from a true account of the facts, what will benefit and what will prejudice them." *Legum v. Murray (In re Murray)* 249 B.R. 223, 230 (Bankr. E.D.N.Y. 2000) (quoting *Morris Plan Ind. Bank v. Finn*, 149 F.2d 591, 592 (2d Cir. 1945)).

Here, the Defendant argues that many of the assets excluded from her Petition have no material effect on the administration of the bankruptcy case since the estate would have no great interest in them.  As an example, the Defendant points to the fact that she has no equity in her home,

23

47 East 33rd Street, and thus the sale of that asset would not impact the Plaintiff's claim. However, as stated above, the fact that the Defendant's assets are of little value does not mean that such assets are immaterial to the administration of the Defendant's bankruptcy estate. Certainly, the Defendant's home, in addition to her liability to the New York Department of Labor and her interests in such assets as (1) the Suarez receivable, which ranges from $60,000 to $70,000, (2) the proceeds from the sale of the van, and (3) the transfers she received from CS Carpentry, would all be of interest to the Defendant's creditors. Regardless of their value, excluding these liabilities and assets prevents the Defendant's creditors from investigating and fully understanding the Defendant's financial condition and her previous business dealings. Accordingly, the Defendant's omissions are material to the course of this bankruptcy proceeding.

Having found that the elements required for a denial of discharge under § 727(a)(4)(A) are met, the Defendant's discharge is hereby denied.

## III. Dischargeability of Debts under Section 727(a)(2)(A) of the Bankruptcy Code[19]

Section 727(a)(2)(A) of the Bankruptcy Code provides that a debtor will not be granted a discharge where

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate . . . has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed, property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A).

---

[19] Although § 727(a)(4)(A) provides a sufficient basis upon which to deny the Defendant a discharge in this matter, this Court will address the Plaintiff's additional arguments under §§ 727(a)(2)(A) and 727(a)(2)(B) of the Bankruptcy Code.

24

To prevail on a § 727(a)(2)(A) cause of action, a party must prove the following by a preponderance of the evidence: (1) a disposition of property, such as a transfer or concealment; (2) a subjective intent on the debtor's part to hinder, delay, or defraud one or more creditors or the bankruptcy trustee through that disposition; and (3) that *both* the disposition and subjective intent occurred within one year before the petition date. *E.g.*, *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993).

"Concealment" is defined as preventing the discovery of, fraudulently transferring, or withholding knowledge or information required by law to be made known. *Applebaum v. Henderson (In re Henderson)*, 134 B.R. 147, 157 (Bankr. E.D. Pa. 1991) (citing *United States v. Schireson*, 116 F.2d 881,884 (3d Cir. 1940)). What is critical under the concealment provision of § 727(a) is whether there is a concealment of property, not whether there is concealment of a transfer. *Rosen*, 996 F.2d at 1532. Thus, to prove concealment, a showing that the debtor retained an interest in the transferred property is required. *Id.*

When a concealment occurs outside of the one-year period stated in § 727(a)(2)(A), there may nevertheless be a viable claim if the debtor has engaged in a "continuous concealment." *Henderson*, 134 B.R. at 157. Claims based upon the doctrine of continuous concealment require: (1) the transfer of property by a debtor, who despite the transfer, retains a beneficial, or equitable, interest in the property; and (2) the debtor's continued treatment of the property in the same manner as before the alleged transfer. *Id.* (citing *In re Olivier*, 819 F.2d 550, 555 (5th Cir. 1987) (other citations omitted).

A denial of discharge under § 727(a)(2)(A) further requires a debtor's actual intent to hinder, delay, or defraud creditors. *Henderson*, 134 B.R. at 156-57. Because a debtor is unlikely to admit

25

directly that his or her actions were motivated by fraud, however, intent may be inferred using

circumstantial evidence or inferences drawn from a course of conduct. *E.g.*, *Spitko*, 357 B.R. at 301;

*Office of the U.S. Tr. v. Zimmerman (In re Zimmerman)*, 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005).

Courts have also established "badges of fraud," the existence of which indicate fraudulent intent.

Such "badges" include: (1) a close relationship between a transferor and transferee; (2) a transfer

in anticipation of a pending lawsuit; (3) a transferor/debtor who was insolvent or in poor financial

condition at the time of the transfer; (4) the transfer of all or substantially all of the debtor's

property; (5) a transfer that so completely depletes the debtor's assets that the creditor was hindered

or delayed in recovering any part of the judgment; and (6) the shifting of assets by the debtor to a

corporation wholly controlled by him. *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1583 (2d

Cir. 1983); *Holber v. Jacobs (In re Jacobs)*, 381 B.R. 147, 164 (Bankr. E.D. Pa. 2008). An intent

to hinder, delay, or defraud creditors will further be presumed where the debtor gratuitously transfers

valuable property, or transfers property for inadequate consideration. *Randolph v. Somerville (In

re Somerville)*, 73 B.R. 826, 834 (Bankr. E.D. Pa. 1987). Thus, if a transfer is at issue under

§ 727(a)(2), "it must be shown that there was an actual transfer of *valuable property* belonging to

the debtor *which reduced the assets available to creditors and which was made with fraudulent

intent*." *Id.*

Here, the Plaintiff argues in part that the Defendant's failure to list certain assets, income,

and liabilities on her Petition constitutes "concealment" under § 727(a)(2)(A). However, the precise

language of that statutory section requires that the concealment at issue take place during the year

*before* the petition date, not the petition date itself. Moreover, to apply § 727(a)(2)(A) to the

Defendant's false oaths would negate the purposes of § 727(a)(4)(A), which squarely provides for

26

a denial of discharge where a debtor knowingly omits assets or makes false statements on the Petition. *See Spencer v. Blanchard*, 201 B.R. 108, 120 (finding claim that debtors undervalued property on their Petition was more appropriately addressed under § 727(a)(4)(A), as opposed to § 727(a)(2)). Therefore, the issue of whether the Defendant's omissions from the Petition constitute grounds for a denial of discharge was resolved under this Court's § 727(a)(4)(A) analysis.

Next, the Plaintiff argues that the Defendant concealed her ownership of 47 East 33rd Street for purposes of § 727(a)(2)(A) when she transferred it to a "shell" LLC. (See Mem. of Law in Supp. of Pl.'s Mot. for Partial Summ. J., at 17-18.) Although the transfer took place more than one year before the petition date, in accordance with the doctrine of "continuing concealment," the Defendant continued to retain the benefits of ownership during the year prior to the petition date, as evidenced by the fact that she: (1) was the sole owner of the LLC that purchased the property and thereby exercised the same level of control and access to the property; and (2) continued to reside on the property "rent-free." Thus, because she maintained a property interest in the property within one year of the petition date, her actions in transferring the home to the LLC constitute concealment.

With respect to the Defendant's intent to hinder, delay, or defraud her creditors, several badges of fraud exist which demonstrate that the Defendant possessed an intent to defraud the Plaintiff when she concealed her interest in her home. First, there was certainly a close relationship between the Defendant and the LLC as the Defendant was the sole owner of the company. Second, the transfer was made in anticipation of a pending lawsuit. Affidavits submitted by process servers Alice and Henry Dobson demonstrate that the Defendant was served with a summons and complaint in the Plaintiff's lawsuit to pierce the corporate veils of JRC Millworks and International Mill three months prior to the transfer. Third, the Defendant shifted the property to a business wholly owned

27

by her, as she was the sole owner of the LLC.  Lastly, the Defendant's home was transferred for

inadequate consideration.  At the 341 meeting, the Defendant stated that her home had most recently

been appraised for approximately $340,000.  The transfer to the LLC was for $1.[20]  The presence

of these badges of fraud indicate that the Defendant transferred her property to the LLC to hide it

from the reach of creditors, namely the Plaintiff, whose New York state action was pending at the

time of the transfer.

Still, however, the Defendant's disclosure of the property on Schedule A of her Petition

undermines this intent to conceal for purposes of the present bankruptcy proceeding.  *See*

*Continental Bank v. Bobroff (In re Bobroff)*, 58 B.R. 950, 952-53 (Bankr. E.D. Pa. 1986) (finding

concealment with intent to defraud under § 727(a)(2)(A) where debtor hid assets in garage prior to

petition date and later failed to disclose these assets on his Petition); *Dolata v. Dolata (In re Dolata)*,

306 B.R. 97, 113,  (Bankr. W.D. Pa. 2004) (denying discharge where debtor gambled away funds

from closed Certificates of Deposit and did not disclose the funds until Petition was amended for

second time).  While the Defendant did not disclose the *transfer* of her property to the LLC on the

Petition, she did disclose her interest in the property itself.  *See Rosen*, 996 F.2d at 1532.  Thus,

because the Defendant disclosed her interest in her home on her Petition, § 727(a)(2)(A) does not

provide a basis for denying a discharge.

---

[20]One might argue that the Defendant's home is not "valuable" so as to make the consideration inadequate
since the Defendant has no equity in the property and thus the transfer would not impact the assets available to
creditors other than the mortgagee on the property.  *See Somerville*, 73 B.R. at 834.  However, irrespective of the
adequacy of consideration, the transfer of the property to a company in which the Defendant was a sole owner at a
time when a lawsuit was pending against the Defendant provides sufficient bases upon which to infer an intent to
defraud.

## IV.    Dischargeability of Debts under Section 727(a)(2)(B) of the Bankruptcy Code

Section 727(a)(2)(B) provides another basis for denying a discharge where a debtor, with an intent to hinder, delay, or defraud creditors or the bankruptcy trustee, has transferred, removed, destroyed, or concealed property of the estate *after* the petition date. 11 U.S.C. § 727(a)(2)(B). Two elements must exist before a discharge may be denied under this section: (1) an act, such as the transfer or concealment of estate property; and (2) an improper intent. *Henderson*, 134 B.R. at 156.

As stated earlier, "concealment" for purposes of § 727(a) has been defined as preventing the discovery of, fraudulently transferring, or withholding knowledge or information required by law to be made known. *Id.* at 156 (citing *United States v. Schireson*, 116 F.2d 881,884 (3d Cir. 1940)). Furthermore, an improper intent may be established using circumstantial evidence or inferences drawn from a course of conduct. *E.g. Spyra v. Finney (In re Finney)*, 333 B.R. 242, 247 (Bankr. W.D. Pa. 2005); *Dolata v. Dolata (In re Dolata)*, 306 B.R. 97, 149, 155 (Bankr. W.D. Pa. 2004) (reasoning that because the debtor submitted an amended petition disclosing the existence of certificates of deposit ("CD's") but *not* revealing that the funds from these CD's were transferred prior to the petition date, the debtor "consciously deliberated" as to the necessary disclosures and acted with fraudulent intent); *Continental Bank v. Bobroff (In re Bobroff)*, 58 B.R. 950, 952-53 (Bankr. E.D. Pa. 1986) (finding that the debtor's intent to defraud creditors by hiding assets in his house post-petition was shown by the omission of the concealed assets on his petition and the debtor's "knowing failure" to disclose the assets during the Rule 205(a) examination).

In *Spyra v. Finney*, the United States Bankruptcy Court for the Western District of Pennsylvania inferred an intent to defraud where a debtor secretly sold assets at a post-petition auction without court permission or notice to creditors. *Finney*, 333 B.R. at 250. In finding that the

debtor had transferred estate property with the requisite intent, the *Finney* court emphasized the fact that, based on the debtor's conduct, the debtor would not have disclosed the existence and sale of the assets if the sale had not been discovered by the other parties. *Id.* at 249. Also, the full *extent* of the auction sale was disclosed only after the court ordered the debtor to produce an accounting. *Id.*

Here, the Defendant omitted information concerning several assets, sources of income, and liabilities from her Petition, thereby preventing creditors from having a complete and accurate understanding of her estate. It was not until the 341 meeting on May 8, 2008, that the Defendant acknowledged her interest in these previously omitted assets. Therefore, by withholding her knowledge of the assets until the 341 meeting, the Defendant "concealed" estate property after the petition date.

Moreover, as in *Finney*, the Defendant's conduct in the present case demonstrates a reluctance to be forthcoming about her assets, income, and liabilities, and thus shows that she acted with an intent to defraud her creditors. Indeed, the Defendant: (1) omitted several assets and liabilities from her Petition; (2) made contradictory statements concerning her assets and liabilities; and (3) did not acknowledge the omitted assets and liabilities until prompted to do so at the 341 meeting. These factors indicate that the Defendant "consciously deliberated" as to what to disclose and what not to disclose, and that she likely would not have disclosed the assets at all if they had not been discovered and addressed by the other parties. Thus, this Court finds that the Defendant's failure to disclose the assets until the 341 meeting was not the result of simple carelessness but rather an intent to hinder, delay, or defraud her creditors. *See Dolata*, 306 B.R. at 155. Accordingly, a denial of discharge is warranted under § 727(a)(2)(B).

**<u>Conclusion</u>**

For the reasons set forth above, the Plaintiff's motion for summary judgment is granted and
the Defendant's discharge is hereby denied.  An Order in conformance with this Opinion has been
entered by the Court and a copy is attached hereto.


/s / *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE


Dated: April 5, 2010